John Walker CUTRER, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Debbie COOPER, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Court of Appeals of Kentucky.

Aug. 2, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Oct. 23, 1985.

Joseph S. Freeland, Freeland, Glanville & Megibow, Paducah, for John Walker Cutrer.

Mark A. Posnansky, Appellate Public Advocate, Frankfort, for Debbie Cooper.

David L. Armstrong, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

Before COMBS, REYNOLDS and WILHOIT, JJ.

COMBS, Judge.

This case involves two appeals from a judgment of the McCracken Circuit Court which convicted appellant, John Cutrer, of third-degree criminal abuse and convicted appellant, Debbie Cooper, of second-degree criminal abuse. These appellants were jointly indicted for first-degree criminal abuse and were tried together in the lower court. Although they have filed separate appeals, we find that their cases involve common questions of law and fact so we will decide them together.

Appellant, John Cutrer, has a daughter, Melissa, by a former marriage. Melissa was four years old when this litigation arose and resided with her mother, Patricia. In August of 1983, Patricia left Melissa with Cutrer and his girlfriend, appellant Debbie Cooper, for a few days. When Patricia returned for Melissa, she observed bruises on Melissa's face and back so she took the child to the hospital.

At the hospital, Melissa was photographed and examined by a social worker and a physician, who appeared as witnesses for the prosecution. The doctor testified that blood found in the child's urine indicated some kidney bruising and opined that Melissa had been the victim of child abuse. Both the doctor and the social worker felt that the facial bruises were handprints.

Appellants testified on their own behalf. Cutrer and Cooper each admitted spanking Melissa, but both appellants maintained that the spankings did not cause the bruis-

es. Appellants suggested that the bruises were caused by the child's banging her head on a metal bed frame and sliding down a playground slide.

Debbie Cooper was convicted of second-degree criminal abuse under KRS 508.110 and sentenced to one year in the penitentiary; John Cutrer was convicted of third-degree criminal abuse under KRS 508.120, fined $500.00, and sentenced to twelve months in the county jail.

Appellants argue that their convictions must be reversed because KRS 508.110 and KRS 508.120 are unconstitutionally vague.

KRS 508.110, criminal abuse in the second-degree, reads as follows:

> (1) A person is guilty of criminal abuse in the second degree when he wantonly abuses another person or permits another person of whom he has actual custody to be abused and thereby:

> . . . . .

> (c) Causes torture, cruel confinement or cruel punishment;
> To a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

KRS 508.120, criminal abuse in the third-degree, reads as follows:

> (1) A person is guilty of criminal abuse in the third degree when he recklessly abuses another person or permits another person of whom he has actual custody to be abused and thereby:

> . . . . .

> (c) Causes torture, cruel confinement or cruel punishment; to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

Appellants reason that because there is no statutory definition of "cruel punishment", the statutes fail to convey a sufficiently definite warning as to the proscribed conduct and are therefore void for vagueness.

■ It is ironic that appellants attack the term "cruel punishment" as being unconstitutionally vague when that very term is found in the Eighth Amendment of the United States Constitution as well as Section 17 of the Kentucky Constitution. Our courts experience no difficulty in determining what constitutes cruel punishment within the strictures of Section 17 and the Eighth Amendment. *See, e.g., Workman v. Commonwealth,* Ky., 429 S.W.2d 374 (1968). [Cruel punishment is punishment which shocks the general conscience and violates the principles of fundamental fairness]. Outside the criminal arena, our cases define "cruel" as "heartless and unfeeling". *See Connelly v. American Bonding & Trust Co.,* 113 Ky. 903, 69 S.W. 959 (1902). This is consistent with KRS 446.080's directive that ordinary words in statutes shall be given their ordinary meaning, and the dictionary definition of "cruel" as "disposed to inflict pain or suffering: devoid of human feeling." Webster's Ninth New Collegiate Dictionary 311 (1984).

■ Although reasonable minds might differ as to the precise degree of misconduct that constitutes cruel punishment, the due process clause does not require statutes to meet impossible standards of specificity. As our high court noted in *Payne v. Commonwealth,* Ky., 623 S.W.2d 867, 871 (1981):

> The definitional section [of the KRS] read as a whole, coupled with a reference to any standard dictionary, should provide the ordinary person of common sense a clear enough indication of the type of acts prohibited.

■ We think the plain language of KRS 508.110 and KRS 508.120 is sufficiently clear to apprise ordinary sensible persons of the type of acts they sanction, and conclude that those statutes are constitutionally sound.

Both appellants attack the sufficiency of the evidence presented at trial. Appellant Cutrer maintains the lower court erred in refusing to grant his motion for a directed verdict at the close of the Commonwealth's case, because there was insufficient evidence at that point to take the case to the jury. There is no criminal rule in Ken-

tucky dealing with directed verdicts as such, but RCr 13.04 imports the Civil Rules into criminal proceedings to the extent that they are not superseded by or inconsistent with the criminal rules.

 CR 50.01 states that "(a) party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted ... to the same extent as if the motion had not been made." However, if a party chooses to proceed with his case after the motion is denied, he assumes the risk that his evidence will fill the gaps in his opponent's case, forfeiting his claim of error. According to *Lyon v. Prater*, Ky., 351 S.W.2d 173 (1961), "an error in denying such a motion at the close of the plaintiff's evidence is held to be cured when the defendant by his subsequent testimony has supplied the omission in the plaintiff's case."

In this case, the record clearly shows that the appellants' testimony cured any defect in the state's case. In fact, appellant Cutrer admits that the entire record contains sufficient evidence to justify submission of the case. We, therefore, find no error in the trial court's ruling.

Appellant Cooper alleges that there was insufficient evidence that she had custody of Melissa at the time of the incident, but we find that appellant's charge is refuted on the face of the record, including her own testimony.

Appellant Cooper also attacks the trial court's instructions on two different theories which we need not consider because appellant failed to bring her objections to the trial court's attention. The function of the Court of Appeals is to review possible errors made by the trial court, but if the trial court had no opportunity to rule on the question, there is no alleged error for this court to review. *See Payne v. Hall*, Ky., 423 S.W.2d 530 (1968). *See also* CR 59.06.

The judgment of the McCracken Circuit Court is affirmed.

All concur.